Anyway, we have two cases this afternoon, and the first is number 20-2828, United States v. Bergrin, Mr. Lustberg, and Mr. Coyne. Feel free to go ahead. Can I take off? Absolutely. Now my glasses won't fog up. This is much better. Good afternoon. May it please the Court, it's a pleasure to be in this courtroom, or frankly any courtroom. I hope everybody is well and safe and happy and healthy. I would like to, Judge Ambrose, respectfully reserve two minutes for rebuttal. It's fine. Thank you. Not with this group, it doesn't make that much difference. I have some familiarity. This motion, Your Honors, sought a new trial based largely on a particular type of evidence, which was evidence that the key government witnesses on many counts, admittedly not all counts, and we did not bring a motion for a new trial based on newly discovered evidence with respect to all counts, had concocted their stories about Bergrin, or more specifically, had admitted to other witnesses that they had done so. And that was true with regard to three of the most critical counts of the indictment of which he was convicted and for which he now serves six life sentences, one that he conspired to murder Kimo McRae, one that he conspired to murder witnesses against his client, Estevez, and one that he distributed drugs. We're well familiar with it. I know you are, Judge Jordan. One quick overview question that I have is with respect to the, going forward to the Brady claims, are they exempt from Rule 33 with civil diligence requirement? Yes, Your Honor. Can you point to a case that says that? I'm going to ask the same question of you, Mr. Coyne. So this court said that in Dennis and then reiterated in Bracewell. The law is that, with respect to Brady claims, that there is no due diligence requirement. I think it's very clear. That doesn't mean that if a, and this flows from cases like Palullo and so forth. So with regard to the Brady claim in particular, Judge Ambrose, and I hate to say, as I just said to my colleague, I've been around long enough so that I'm arguing about cases that I argued like Palullo. And, you know, the key issue in Palullo was the question of if the government misrepresents what evidence contains, does that constitute a Brady claim? And particularly if the government says in all this evidence there's nothing valuable or it would be damaging to you, that kind of thing. And that turns out not to be true. Is that a Brady claim? And what the court said in Palullo was that is a problem, but if the defendant actually had reviewed the materials and so forth, then there was no, you know, he had access to it and so there was no Brady issue, as there never would be a Brady issue if the defendant actually had the information. The issue arises in situations like a Palullo case or like a Bergeron case where there's just volumes and volumes of evidence, in this case thousands of hours of tapes. And in this case, tapes that had been suppressed voluntarily by the government. Well, on the Brady front, which are the, you're pointing to the tapes and to proposed testimony from Mr. Miller. Are there any other pieces? Those are the two things that you're looking at. That's correct, Your Honor. Look at the Miller piece to begin with. The district court also said that that wouldn't be material, right? Didn't the court in effect say it's just not believable? So the court, the district court didn't really address the Brady claim in Miller separately, with regard to Miller separately. The court's primary holding with regard to Hassan Miller was that Mr. Bergeron should have discovered Mr. Miller's statements if he had exercised due diligence. But didn't Judge Arlay also say no condition of reliability was associated with that proposed testimony? She didn't. Not with regard to Mr. Miller. She points with regard to Miller. I mean, her specific, she does, with regard to Miller, she says that all she said, Judge Jordan, was that his proffered testimony, quote, suffers from the same admissibility and credibility issues as Madison's statements. She found that Madison's statements were, had a certain lack of plausibility. But with regard to Miller, she really just reiterated that it had credibility problems. Well, didn't she also say it was not newly discovered? That was the crux of her holding with regard, that's correct, Judge Roth. With respect to Miller, the crux of her holding was that, not that it wasn't newly discovered, but that it could have been discovered by the exercise of due diligence. And even if it was, it was unlikely to result in Mr. Bergeron's acquittal. So what she says about it is that because it's, her specific holding was that because it suffered from the same admissibility and credibility problems as Madison's statements, it was unlikely to produce an acquittal. This is footnote 8 on page A11. She said, even if it were newly discovered, it suffers from the same admissibility and credibility issues as Madison's statements. Isn't the assertion that this has got admissibility and credibility issues, and then later quoting from the McIntosh case, no indicia of reliability, isn't that a, in effect, the district court saying this isn't material? It's hard, Your Honor, for me to understand. She didn't say that specifically, and it's hard for me to imagine how it would not be material. This was a case as— Well, Mr. Lesberg, if she's saying it's not believable, how could it be material if the district court's assessment of credibility is it's just not credible? There's no indicia of reliability. In effect, she's saying a reasonable jury wouldn't give this any weight. If she said that and did that analysis, we might have a somewhat different argument. But either way, we would have, our argument in some ways would be the same. Let me, if I could, just break down your question. I'm packing it into two pieces. The first has to do with materiality. What both the Madison and Miller statements are about is about the main witness in the case. This was a one-witness case with regard to a terrible murder. What they said is that he told them he had lied. That's what it's about. So to me, materiality is really not an issue. If that's true, this is a very disturbing statement. So now you get to the question that you're raising, which is would it have the sort of probability of acquittal. That's the last prong of the analysis, and I think that's what you're focused on. No, I guess I'm looking at this differently. You're saying something is material whether it's utterly unbelievable or not. And I take the judge's comment to be that it can't be material if it's utterly unbelievable, that evidence that no rational jury would buy into, by definition, isn't material evidence. And here you've got after-the-fact statement, jailhouse, stitch kind of stuff, and no indicia of reliability to it, severe credibility problems. I'm not sure it breaks down the way you're suggesting it. It's material, and then you ask the question. And also, it wasn't merely the host of things. One, the transcript wasn't sworn to or verified. I think there were significant problems with the testimony, and then the court saying even if it were to be admitted, I don't think it's going to result in acquittal when you look at the last of the INLE factors. I think it's important to break each of those down. Let's start with that. If I could. The first issue is there's no evidence that he actually had that statement, the specific statement, at the time of the second trial. There was really no dispute as to whether he had it. In fact, her holding with regard to Miller was that he should have discovered it, that he had a different, as a result of having a different tape recording. And I think we might be with you on that, that Dennis says there's not a diligence requirement with Brady. At least I'm with you that far, that Codomo went out the window with Dennis. So Dennis says, so assume for the sake of discussion that we thought Judge Arleo sort of misstepped there, but she has this alternative basis for her ruling. Now, I don't want to cut you off because if you can instruct me, I'm happy to be instructed. If you think that materiality stands independent of credibility, that that is you could have something that's incredible and it still be material, I'm interested to have you flesh that out. But you'll have to explain to me how that advances the analysis. Yeah. You know what? I'm not sure it does advance the analysis. At the end of the day, the last INALE factor is, the factor is what is the likelihood, the probability of acquittal. It's called the probability of acquittal standard. This court opined on it most recently in Kelly. That might not be the most recent, but one of the more recent decisions was in Kelly. And one of the things the court said in Kelly was that that issue about whether there's a likelihood of acquittal is the kind of thing that a court has the obligation to determine. So you're right. Is that the same analysis, is the same question presented by the INALE last factor as is presented by the materiality factor in Brady? In other words, INALE is asking what the probability of acquittal would be, right? But Brady is asking, it's like a little more generous to you, isn't it? I mean, it's like whether the . . . Sufficient to undermine confidence in the outcome. Yeah, whether the defendant would like . . . Okay. So I want to set INALE aside for a moment because I'm trying to pay attention to your Brady claim. Okay. All right. How do you deal with the materiality point if the court makes, as it's entitled to make, a judgment that there's no indicia of reliability here, it's not believable? How do you deal with that? The way we have dealt with it, and respectfully, what I think the right answer is, is if there are serious credibility issues, that the court should hold a hearing and make that decision for itself. That's what hearings are for in the context of Rule 33. In particular, for Brady II, that is to say, this is a particular statement. By the way, I don't want to confuse matters because the Brady claim, in some ways, for Miller to be completely candid with the court is a more limited one than the Rule 33 claim, where we do have a requirement of due diligence. Right. It starts with the due diligence requirement, and she finds that he didn't exercise sufficient due diligence with regard to that. We challenge that because we say that she applied too high of a standard for due diligence, that what she said he should have done while he was incarcerated, and pro se was to have interviewed other inmates in a jail where he wasn't. And that was just too much to ask. It's a heightened measure. The reasonable diligence that the court requires in Kelly is just that, reasonable. It's not a heightened diligence standard. Right. Now you're on your Rule 33 piece. Yes, I know. I'd like you to stay on the Brady piece for a minute because I'm still struggling a little bit with why the alternative materiality thing isn't dispositive, and I take it your position is she's not entitled to make that decision without bringing Miller in and hearing him say it in court? I would not want to say that that is a per se rule in every single case, but I do think that in a case like this, and if you look at the proofs here, she doesn't explain really the reasons, all the reasons why. What she says, you read it, what she says is that he was subject to the same admissibility and credibility problems. I'd like to, if I could just for a second, and I know I'm out of time. No, take your time. Okay. You're fine. I thought that would be the case. So I lost track of myself. Okay. So with regard to admissibility, so that's what she says, there's admissibility and credibility problems. With regard to admissibility, what she says, it's not admissible because it would be a hearsay statement. That's true, and we don't contend otherwise, but it would go to credibility, and one of the big problems that plagues Judge Arlio's opinion throughout is that she frequently, and I could go through each of the times for you. I think we do it in our papers. She frequently says this is not material or this is unlikely to produce an acquittal because it only goes to credibility. But this court in Quiles said that issues of impeachment may result in a motion for a new trial under Rule 33, may result in a grant. They may, but they may not. Quiles makes it abundantly clear that that's not a rule that they get you out of dodge. Otherwise, you could always bring in the proverbial jailhouse snitch to say, yeah, yeah, he told me he didn't do it, or this other guy said he did it, and that's what she's dealing with here. She's dealing with somebody coming in after the fact, and she says no indicia for liability, and in the face of, you know, you characterize this as a one-witness case, but there's a whole lot of evidence against Mr. Berggren circumstantially supporting the idea that he would have no problem suggesting no chemo, no case. So she's looking at this whole body of evidence. Why isn't she perfectly entitled to say, on the Ionelli side, that is just not going to carry? I don't have to bring him in and have him say that in the courtroom. I can look at this and say that just wouldn't carry it. Your Honor, I think this would be a different case if she explained why she didn't do that. But here's the problem that this Court has, is she bases her conclusion that there's not a, whether you call it materiality or likelihood or probability of acquittal, on credibility issues, and she does that repeatedly, and each and every time she does that, there are issues, there are disputes of fact that arise, and we have a mechanism for deciding those, and I'm not making up the idea that this mechanism is appropriately used even for somebody as, even for Paul Berggren in the context of a motion for Rule 33, under Rule 33. In Kelly, that's what happened. The Court there made credibility determinations. Well, actually, it declined to. There are cases where they bring him in, and there are cases where they don't bring him in. Right. Let me ask you this, Mr. Lesberg. You've laid out a series of pieces here. You've got Madison. You've got Miller. You've got Sauceda. I'm not sure I'm saying the name right. Sharif. You've got the former girlfriend. Benoit. And you've got Benoit. You've got the tapes. If you're picking one that you thought, man, this is the best, this is the crucial one, is Miller the one? We've spent our time talking about Millers. Miller the one? Let me, what I would say is there's a category of them that includes four of them that are the ones. Miller and Madison. So Miller and Madison are the two who say, in strikingly similar fashion, that Anthony Young is going around saying that he lied in his testimony. And that should give a court concern. The Sharif one goes to Braswell, and it's a very similar type of claim. And part of the Sauceda piece is that, for Oscar Cordova, that he also is saying that he was willing to make things up and had to in order to preserve his own status against Mr. Berggren. So it's those together that, and let me just say, a hundred percent there are credibility issues with regard to any of them. This would not have to be a long hearing. But what the court should have done is had them in, listened to them, and if she had made findings as exactly as occurred, or I should say as should have occurred in Kelly, if you remember what happens in Kelly is that the court says, these are credibility issues, they're for the jury. And the court says, no, that's not true. You need to make credibility findings here in order to decide whether to grant the new trial in the first place. That ruling is clearly correct, and that's what should have happened. What about the claim with respect to Miller that the evidence that's being purported now, under Rule 33, is not newly discovered? With regard to Miller? Yeah. So the holding was not exactly that it wasn't newly discovered. The holding was that it should have been discovered through the exercise of due diligence. And as I mentioned a few minutes ago, the particular thing that Judge Aurelio says with regard to that evidence is that, if you remember, there was a tape of Mr. Miller in the first trial. That tape was not nearly as revealing as the statement that he then gives. In fact, what she's saying is it's deemed not newly discovered because it could have been discovered through the exercise of due diligence. That was her holding, Your Honor. And our argument with regard to that holding is that what she's demanding, what she says she's – this is very clear from her opinion. She says what Bergman could and should have done is had somebody interview other inmates at the Hudson County Jail to find out whether they were hearing the same kinds of things. That's asking an awful lot by way of due diligence for a defendant who's being told that somebody has said that they lied about him at a trial. Mr. Lutzberg, is this a guy who's on tape ordering the hit of another witness in another case? I mean, it's not like it was just Young, right? It wasn't just Young. It was just there was this panoply of evidence that implicated your client in multiple crimes, including some horrific witness-killing crimes. So it isn't just like she said, I don't know, Young and Miller, how do you weigh those two? There was a whole lot of other evidence in the mix that she was – she's absolutely entitled to look at the whole record, isn't she? Absolutely, Your Honor. But one thing – absolutely. But this is a motion for a new trial based on newly discovered evidence, and this is uniquely powerful newly discovered evidence because each of those pieces of evidence that you've talked about, some of which were charged but some of which were not charged. I mean, one of the main ones that the government cites all the time is this guy Richard Pozo, uncharged conduct, comes in under 404B. But keep in mind that if the truth was that Young had lied about it, it wouldn't matter to those counts, to the chemo murder counts, which were the guts of this case. You know, there was other evidence, and some of it was regarding other crimes, but the guts of this case was the chemo murder. And we have the sole witness, really, the sole witness with regard to that murder, who, if the evidence is true and she should have assessed it, is saying that he made it up to save his own skin. That's disturbing, and respectfully, I think the Court should have been disturbed. Any further questions? Thank you. We'll get you back to the double. Mr. Coyne. Good afternoon, Your Honors. May it please the Court, I'm Mark Coyne for the United States. It is always a pleasure to be here in person. And I know, Judge Ambrose, I saw you not too long ago, but Judges Jordan and Roth, I believe the last time I saw you was in 2017 in person. I'm pleased to be back. I would like to begin with the question that Judge Ambrose said he would pose to me as well. Can you keep your voice up, please? I'm so sorry. Is this better, Your Honor? Yeah. I'd like to begin with the question that Judge Ambrose said he would pose to me as well on behalf of the panel, which is, how do you treat a Brady claim in the context of a Rule 33 motion? And I think, you know, I would welcome an opinion from this Court that makes crystal clear how you do that. I do think in writing that opinion, the Supreme Court's decision in Agers goes a long way, because if I'm remembering Agers correctly, it was a Rule 33 motion context. And the Supreme Court in Agers did say that because the claim is that the government withheld information that it should have disclosed, the ordinary, very difficult-to-meet Rule 33 standard should not apply, rather it should be the standard that we know as the Brady-Giglio standard. Had the evidence been disclosed, assuming for a moment suppression, assuming that the government had it, had the evidence been disclosed, is there a reasonable probability of a different outcome? And so we think in that sense, I think I agree with my good friend, Mr. Lussberg, that you have to apply certainly that aspect of Brady. And Dennis? So this is where it does get a little complicated, at least for me, and I don't mean to speak for the Court in that regard, because I view Dennis makes clear, overruling prior contrary precedent from this Court, you know, Perdomo and others, suggesting imposing a due diligence requirement upon the defendant to obtain readily available information if it's readily available from other sources. No doubt about that. We accept that. That is the law of the circuit. We're not challenging that. Bracey then says, Bracey applies Dennis in the context, if I remember correctly, again, 2244Ds, due diligence requirement in the context of newly discovered evidence of a Brady violation. And so that's the other place that I would look for guidance as to how to apply, how to treat a Brady claim that is raised in the context of a Rule 33 motion that is premised upon newly discovered evidence. And if I'm remembering Bracey correctly, the point there was all you're requiring is you can, the defendant is entitled to rely upon the government to comply with its obligations under Brady and Giglio. Hold on, Mr. Coyne. Are you saying that because the Brady claim is nested in the 33 motion for a new trial that the due diligence requirement gets reimported? No, I'm not saying that, and I apologize if I'm being unclear. Bracey was dealing with a statutory due diligence requirement in the habeas context, and then Bracey was interpreting what that statutory due diligence requirement required when the newly discovered evidence claim is a Brady claim. And so there, if I remember again, and I'll obviously defer to the Court's own opinion. I thought Judge Krause had written that opinion, but I may be mistaken. But in Bracey, the issue was if the defendant, number one, the defendant is entitled to rely upon the government to comply with its obligations under Brady and Giglio. No dispute there. Fully consistent with Dennis. Number two, though, if the defendant is put on notice that there might be something there, then you start importing back in a modified due diligence requirement. But I agree that it is not the full-blown due diligence requirement that aspects of Judge Arlio's opinion might have imposed here. Yeah. Why do we need to get into that if there's a finding in effect of no materiality? I agree this Court need not get into that for purposes of resolving this particular case. That's what I'd like to resolve, is this particular case. That's always a good approach for any court. Decide the issues on the narrowest grounds possible. Decide the issues before you. I have to live with it. Well, and I, on behalf of all litigants in the circuit, we live with all of you, and we are grateful for your guidance. My only point about perhaps going a little broader than absolutely necessary is guidance. Clear guidance is always appreciated by everybody, as I know this Court appreciates. But on this issue, I think my good friend, Mr. Lussberg, dilutes what Judge Arlio actually did. She said, putting aside the due diligence issue with Hassan Miller, and I understand now that Mr. Berggren is really focusing on the piece of Hassan Miller where he alleges that Hassan Miller told the government, including AUSA John Gay, who signed with me the government's opposition brief to the Rule 33 motion below, that he told the government that Anthony Young was lying and telling everybody he was lying and falsely implicating not just Paul Berggren but Curry and others and even falsely implicating himself in the murder of Kimo Deshaun-McCray. Now, we represented. That never happened. Yeah, so why didn't, why not have Judge Arlio just hear from Mr. Gay and hear from Mr. Miller? I mean, in Lima, the Court said, if I'm recalling correctly, look, it would have been the better course to have people and have a short hearing. Should we say, hey, we really meant that. That's the better course. Do it. But in Lima, the Court went on to affirm the denial of that Rule 33 motion without an evidentiary hearing. It is still something that is committed to the district court's discretion, in this case, Judge Arlio's discretion. And in exercising that discretion, as I think everybody in this courtroom agrees, maybe she was entitled to look at the entirety of the record. Well, the record on this also, and, you know, could Judge Arlio have written more than she did to lay out even more clearly her reasoning? Sure, anybody, that could be true of virtually any opinion, at least at the district court level. But here are a couple of things that stand out from that record. Judge Arlio not only cited to the FBI document that explained the whole reason for having Mr. Miller wear a wire to record Anthony Young, and that document said the reason was they were trying to see if Anthony Young would admit again, as Hassan Miller had claimed to the government he already had, that he was the trigger man. Not just that he might have been involved in the crew looking out, trying to find Kimo DeShanda Gray, but that he was actually the trigger man, because at that point, when this was going on, Mr. Young was denying that he was the trigger man. He was blaming somebody else and said he was in a van a couple of blocks away serving a lookout point. So we have that. But on top of that, the lead FBI case agent at trial testified that that was the reason they had Hassan Miller wire up. Is this Hiltman? Sorry? Is this Hiltman? No, this is Agent. This is Agent. In the record, she's referred to as Agent Sean Brokus. Sorry, Sean Manson. Her name now is Agent Sean Brokus, but I'll double-check just to make sure. And so we have sworn testimony from the lead case agent from the FBI looking into the death of Kimo DeShanda Gray about why we had sent, why we had asked Mr. Miller to wire up. None of that would make sense if Miller had told us Anthony Young was lying about not just his own involvement in the crime, but also the involvement of other people in the crime. The goal here, and the record shows this, the FBI's goal here, and my office's goal here, was trying to find out what role did Anthony Young himself play. Was he merely a lookout, as he was then describing, or was he, in fact, the trigger man? So there's, yeah, nobody's questioning, and I don't even hear Mr. Lussberg questioning, that there's a lot of evidence against Mr. Bergeron. I understand. A lot of evidence against Mr. Bergeron. What I take his argument to be is that's true, but when you come right down to it, at least as to this kill-a-witness count, which is maybe the most dramatic one in the case, you are relying on this guy that even you didn't believe. You wired people up because you didn't believe him. You had to test his credibility yourself. Under those circumstances, if the person you wanted to get additional information from comes in and says, hey, listen, he said he was making this stuff up, doesn't that at least get an evidentiary hearing? I don't think it does, and I want to be clear. I'm not here to argue that it would have been an abusive discretion to have an evidentiary hearing to explore the Miller allegations. I'm not. But what I am saying is on this record, it was not an abusive discretion to conclude that an evidentiary hearing was not necessary because it could not, because, and I want to gauge in one sort of counterfactual, because Kelly stands for this proposition, so does, for that matter, in the plain error context, the Supreme Court's most recent teaching in Greer, that we engage in a counterfactual analysis, assume for a moment, as if this were a motion for summary judgment, we accept as true that Hassan Miller would in fact say this in front of a jury, that Anthony Young told me he was lying about everybody, was putting stuff up on Paul, putting stuff on Paul Berger and others just to work off a five-year state case, because that's what Hassan Miller says in this 2013 recording. Still, I've never heard that recording. It's never been provided to us. There's no certified, there's a transcript of the recording, but I've never even heard the recording. Okay, putting that aside, putting that he's not counsel. It's not been certified. Yeah, and putting aside that, right, and that raises its own sort of credibility wrinkles. So how could that be used at a trial? To use it properly, Mr. Berger, cross-examining Anthony Young, would confront him with this allegedly made prior inconsistent statement. In dollars to donuts, Anthony Young would have said, I never said that. And then maybe he could call Hassan Miller or Charles Madison, makes a similar claim, to impeach Anthony Young's denial that he ever said that. But he called Rashida Tarver for essentially the same purposes at the first trial. Instead, he would call her again at the second trial to establish that Anthony Young was simply making things up to curry favor with the government. He also crossed him at length with this Hassan, and I want to distinguish between the two recordings, the one that Hassan Miller made when wired up as opposed to obviously this interview. He crossed him at length about that. And that cross-examination span, I mean, when I say length, as I recall, it spanned days, both in trial one and in trial two. And so I'm not here to suggest that Judge Arlio, I believe Judge Arlio did a fine job overall in her opinion, especially given the volume of this record. Yeah, and just to be clear, this, the supposed impeaching testimony from Miller that wasn't made in the presence of counsel, only to an investigator supposedly, right? Yes. Not sworn, not made under oath, and the transcript, as you said, not certified. Those are all, that's the state of this. Yeah, that's the state of this impeachment evidence. Right. With an additional point to make, though, which is it is, at least in my view, it is simply more of the same. The theme of Paul Berggren's defense as to, and I'll call them for purposes of this, the top counts. When you say it's more of the same, isn't more of the same sort of significant if you've got two people saying it than one person saying it? Well, I mean, I haven't, what I have in mind here is this Court's, a different line of precedent that I don't think at either party is head-sighted in the briefs necessarily. But when the impeachment in question would open up a whole new avenue or category of impeachment from a giglio perspective, that can be material, right? Yeah, and courts can control for that. They can say, I'm not letting you bring in too much extraneous evidence. We're not going to have a mini-trial. But that's committed to the sound discretion of the district court. But it's odd to hear the government taking the position at one and the same time that this is just more of the same and cumulative, so forget it. And also saying, in effect, this is one guy. I mean, it's hard to, it's hard to, it's hard for me, at least that's how I read some of the stuff that was being said, getting behind Judge Cox's, excuse me, Judge Arleo's position that this was small stuff in the grand scheme of things, you know? It just wouldn't have been, it would not have made a material difference. It just wouldn't have. This is a guy, credibility issues, but it's also small stuff in the overall set of powerful evidence. So don't you, aren't you in a tough position to say merely cumulative if you have more than one person coming in and making the same point and adding to the weight of evidence and corroborating one another? And I hope that our briefing hasn't suggested that we're trying to play two sides of the same coin simultaneously. If you take my point, though. I do, and if I could try to, maybe in my answer, and I see I'm getting close to the time limit, but I do appreciate your leniency with the clock, Judge Ambrose. So a couple of things. One of which is, and again, doing the counterfactual, right? He calls Hassam Miller, he calls Charles Madison, but he's really focusing on Hassam Miller because there's no allegation that the government knew anything about Charles Madison, so that's a pure Rule 33 claim. That's a newly discovered claim, not a Brady claim. So let's put Mr. Madison aside for a moment, or even if we keep him in. Let's say Mr. Miller testifies. We're not just going to sit on our hands and not cross him. Of course we're going to cross him, and we're going to bring out all we know about Hassam Miller and all the many reasons why he should not be trusted. That's one thing. The second thing is there are aspects of what statements attributed to Hassam Miller in the course of the Rule 33 briefing below, or the justifications for why he refused to be interviewed, were themselves not credible. They claimed that they tried to interview him, but they refused, I believe, prior to the second trial. And so we're talking now the 2012-2013 time period, and he refused because he was afraid that we would retaliate against him because he was a cooperator. He was sentenced in his federal case, in which he cooperated, two times served, in 2007. And so when you have that kind of demonstrably false, and I'm not faulting Mr. Lustberg for that at all. He's doing an admirable job advocating for Mr. Bergeron in the finest tradition of the bar. But when you have that kind of – and we highlighted that problem for Judge Arleo. She's entitled to look at that too and sort of assess overall the credibility that Hassam Miller would even say what they claim he would say. And then even accepting it is true, even accepting it's true that he would say that, she then is entitled to engage in the counterfactual. Well, then let's see how that would play out at trial. And in doing that, what she's doing is really no different than what this Court does when it is reviewing a denied Brady or Giglio claim. Okay. I got you. I'm happy to address any other questions the panel may have. But again, if I can only close then by saying thank you again for the privilege of being here. It's the first time I've ever argued in this city, and I'm grateful for the opportunity. Welcome to Wilmington. Thank you so much. Maybe we'll get you back. Thank you. Mr. Lustberg. Thank you, Your Honor. Very quickly, I thought it was interesting that Mr. Coyne sought to put Mr. Madison aside. Mr. Madison's proposed testimony, which was sworn, and by the way, on the issue of being sworn, it's not at all clear that there's any requirement that testimony be sworn in order to be relevant for purposes of Rule 33 motion. But Madison's testimony was to the same effect. It's not a requirement, but would you agree it helps? Of course. And if you can get it, you do. It's like this is, like I said, once removed. It might be twice removed. I mean, you've got Young supposedly saying that Berggruen told him something, and then Madison saying a childhood friend of Young saying, provided an affidavit alleging, well, Young admitted to implicating Berggruen. So it's Berggruen, Young, Madison? No, well, no, all it is is, no, there's no Berggruen statement with regard to this. So this is, the issue here is very simple. Did Young admit to somebody that he falsely testified? That's it. And there are two witnesses who say that he did. One is a sworn statement. The other is not a sworn statement. The one that is a sworn statement, Mr. Madison does not run, according to Judge Arlio, does not run into any of the problems of whether due diligence was exercised or whether it was or wasn't newly discovered. It was newly discovered. But it would not lead to an acquittal, she said. She said it had credibility problems and that it had admissibility problems. And I think Mr. Coyne, as he always does, did a very good job of explaining how it would be, how it would come into a trial. But the main thing he did, Your Honors, is he talked about what the process would be if that testimony was adduced. He talked about how it would be cross-examined, and then the court could evaluate it. That did not happen here. So the very process that Mr. Coyne has outlined is exactly what we respectfully submit should have occurred. Judge Jordan, you have it exactly right. This is monstrously important evidence. There is a lot of evidence in this case. You're right. I have admitted to that. But this was the key count. And it's respectfully a very different trial with that count coming to a different conclusion. And some of the other evidence would also be weakened. Your Honors, just in conclusion, the government's position is that what Judge Arlio correctly held was that this evidence was not credible as a matter of law. Credibility should be adjudged in a courtroom. And it should particularly be adjudged in a courtroom where it's not just the credibility of this witness, but it's the credibility of this witness in respect to the statements of another witness whom the government has told you again today, and this is clearly true, had vast credibility problems of his own. If ever there were a case where, partly because of the stakes, there should have been a full evidentiary hearing and all this should have been aired out, this is the one. Young got beat up by the defense on Cross, right? More of the first trial than the second, but yes. There's no question about that. And Your Honor, and then I'll sit down, I promise, the thing about it though is that if Judge Arlio was exercising her discretion not to hold a hearing, what this court always requires is that there be some explanation of why she was exercising her discretion in that regard. I think about it all the time in the Rule 403 context where the court requires an on-the-record balancing of probative value versus prejudice. She did not explain... But your argument is that in order for a judge not to have an evidentiary hearing, they have to say, they have to make some sort of findings or statements that are specifically tied to and say, and here's why I'm not having a hearing. Yes, in situations where credibility is at stake. Not in every case. There doesn't have to be a hearing in every case, but in situations where the very decision is turning on a witness's credibility, they should explain why they didn't hold a hearing. Yes, Your Honor. Thank you. Thank you very much. Thank you to both counsel for a very well-presented arguments, and we'll take the matter under advisement.